IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: _____

SURETEC INSURANCE COMPANY,
a foreign corporation,

      Plaintiff,

v.

PALM BEACH MARINE CONSTRUCTION,
INC., a Florida corporation, JAVIER
QUEVEDO, CEBRONE D. ATKINS
and KERRI L. ATKINS,

      Defendants.

_____/

## COMPLAINT FOR DAMAGES

Plaintiff, SURETEC INSURANCE COMPANY, by and through its undersigned counsel,

hereby sues the Defendants, PALM BEACH MARINE CONSTRUCTION, INC., JAVIER

QUEVEDO, CEBRONE D. ATKINS and KERRI L. ATKINS, and states as follows:

### I.  JURISDICTION AND VENUE

1.      This is an action for damages in excess of Seventy-Five Thousand and 00/100 Dollars

($75,000.00), exclusive of interest, costs and attorneys' fees.

2.      Subject matter jurisdiction is based on 28 U.S.C. §1332(a)(1), diversity of citizenship.

The parties are citizens of different states and the amount in controversy exceeds the jurisdictional

limits of this Court.

3.      Plaintiff, SURETEC INSURANCE COMPANY ("SURETEC"), is a corporation

organized and existing under the laws of the State of Texas, which is otherwise registered with and

authorized to do business within the State of Florida.

CASE NO.: _____

4.      Defendant, PALM BEACH MARINE CONSTRUCTION, INC. ("PBMC"), is a for-profit corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in West Palm Beach, Palm Beach County, Florida.

5.      Defendant, JAVIER QUEVEDO, is upon information and belief an individual who resides in West Palm Beach, Palm Beach County, Florida, and who is otherwise *sui juris*.

6.      Defendant, CEBRONE D. ATKINS, is upon information and belief an individual who resides in West Palm Beach, Palm Beach County, Florida, and who is otherwise *sui juris*.

7.      Defendant, KERRI L. ATKINS, is upon information and belief an individual who resides in West Palm Beach, Palm Beach County, Florida, and who is otherwise *sui juris*.

8.      Venue is proper in this Court because it is the situs where the legal obligation arose, where the corporate Defendant conducted the business which gives rise to the instant claims, and where the corporate Defendant and at least one of the individual Defendants reside.

9.      All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

**GENERAL ALLEGATIONS**

**A.      City of Fort Lauderdale Project**

10.      On or about December 15, 2010, PBMC, as contractor, and the City of Fort Lauderdale, as owner, entered into a written contract for the furnishing of labor, materials and services for the construction of improvement to the real property commonly known as "Floating Dockage for Small Boats" (the "Fort Lauderdale Project").

11.      On or about March 5, 2010, SURETEC, as surety, and on behalf of PBMC, as principal, issued *Surety Bond No. 5056188* on the Fort Lauderdale Project (the "Fort Lauderdale

CASE NO.: _____

*Bond"*).  A true and correct copy of the Fort Lauderdale *Bond* is attached hereto and made a part

hereof as **Exhibit "A"**.

12.    As a result of PBMC's failure and/or refusal to satisfy its outstanding financial

obligations on the Fort Lauderdale Project, SURETEC received numerous claims against the Fort

Lauderdale *Bond* from various of PBMC's subcontractors, materialmen and/or laborers who

furnished labor or materials incorporated into the Fort Lauderdale Project.

13.    After SURETEC's investigation of the various incoming claims – which investigation

included direct communications with PBMC – SURETEC issued payments in the total amount of

One Hundred Two Thousand Nine Hundred Forty-Seven and 20/100 Dollars ($102,947.20) to the

following claimants:

| | |
|---|---|
| Marina Utilities, Inc. | $  24,000.00 |
| Technomarine USA, Inc. | $  62,447.20 |
| Nel-G Services, Inc. | $  16,500.00 |
| **CLAIMS TO DATE** | **$  102,947.20** |

14.    SURETEC further incurred substantial losses and expenses in investigating,

addressing and resolving the various claims against the Fort Lauderdale *Bond* in the amount of

Twenty Thousand Five Hundred Nineteen and 90/100 Dollars ($20,519.90).

15.    Finally, SURETEC was able to recoup sums from the City of  Fort Lauderdale in

connection with the satisfaction of PBMC's financial obligations on the Fort Lauderdale Project in

the amount of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

CASE NO.: _____

16.     Based upon the foregoing, SURETEC has incurred losses and expenses in investigating, addressing and resolving the various claims against the Fort Lauderdale *Bond* in the total amount of Forty-Eight Thousand Four Hundred Sixty-Seven and 10/100 Dollars ($48,467.10).

**B.     City of Naples Project**

17.     On or about February 23, 2010, PBMC, as contractor, and the City of Naples, as owner, entered into a written contract for the furnishing of labor, materials and services for the construction of improvement to the real property commonly known as "Riverside Filter Marsh" (the "Naples Project").

18.     On or about February 24, 2010, SURETEC, as surety, and on behalf of PBMC, as principal, issued *Labor and Material Payment Bond No. 506187* on the Naples Project (the "Naples *Bond*"). A true and correct copy of the Naples *Bond* is attached hereto and made a part hereof as **Exhibit "B"**.

19.     As a result of PBMC's failure and/or refusal to satisfy its outstanding financial obligations on the Naples Project, SURETEC received numerous claims against the Naples *Bond* from various of PBMC's subcontractors, materialmen and/or laborers who furnished labor or materials incorporated into the Naples Project.

20.     After SURETEC's investigation of the various incoming claims – which investigation included direct communications with PBMC – SURETEC issued payments in the total amount of Fifty-Two Thousand Nine Hundred Fifty-Four and 10/100 Dollars ($52,954.10) to the following claimants:

CASE NO.: _____

| | | |
|---|---|---|
| United Rentals - Charlotte | $ | 30,679.06 |
| Hannula Landcaping & Irrigation, Inc. | $ | 6,590.70 |
| MDT Personnel, LLC | $ | 15,684.34 |
| **CLAIMS TO DATE** | **$** | **52,954.10** |

21.     Based upon the foregoing, SURETEC has incurred losses and expenses in investigating, addressing and resolving the various claims against the Naples *Bond* in the total amount of Fifty-Two Thousand Nine Hundred Fifty-Four and 10/100 Dollars ($42,954.10).

C.     **Suntrust Bank Lawsuit**

22.     On or about May 9, 2011, Suntrust Bank filed suit in the action styled *Suntrust Bank v. Palm Beach Marine Construction, Inc. et al*, Palm Beach County Circuit Court Case No. 50-2011-CA-006833-XXXX-AV (the "Suntrust Lawsuit"), seeking to foreclose upon certain real properties owned by PBMC.

23.     Given the relationship between PBMC and SURETEC arising as a result of the issuance of the Fort Lauderdale *Bond* and the Naples *Bond*, Suntrust Bank named SURETEC as a Defendant in the Suntrust Litigation.

24.     SURETEC has and continues to be obligated to protect its interests in the Suntrust Litigation, including but not limited to the expenditure of attorneys' fees and costs in defending against such claims.

D.     **Indemnity Agreement**

25.     As a condition precedent to issuing the Fort Lauderdale *Bond* and Naples *Bond* (collectively, the "*Bonds*"), on or about July 10, 2009, each of PBMC, JAVIER QUEVEDO, CEBRONE D. ATKINS and KERRI L. ATKINS (collectively, the "INDEMNITORS") individually

CASE NO.: _____

executed a *General Agreement of Indemnity* in favor of SURETEC (the "*Indemnity Agreement*").

A true and correct copy of the *Indemnity Agreement* is attached hereto as **Exhibit "C"**.

26.     Pursuant to the terms of Article 2 of the *Indemnity Agreement*, the INDEMNITORS,

jointly and severally, pledged to indemnify SURETEC for any losses and/or expenses incurred in

connection with SURETEC's issuance of the *Bonds* on behalf of PBMC, specifically including but

not limited to the attorneys' fees and costs incurred in connection with the prosecution of the instant

action:

> The *Indemnitors shall indemnify and save the Company harmless from and against every claim, demand, liability, cost, loss, charge, suit, judgment, award, fine, penalty, and expense which the Company may pay, suffer, or incur in consequence of having executed, delivered, or procured the execution of such bonds*, or any renewals or continuations thereof or substitutes therefor, including, but not limited to, court costs, mediation and facilitation fees and expenses, funds disbursement and escrow fees, fees and expenses of attorneys, accountants, adjusters, inspectors, experts, and consultants, whether on salary, retainer, in-house, or otherwise, and the expense of determining liability, or procuring, or attempting to procure, release from liability, or in bringing suit or claim to enforce the obligation of any of the Indemnitors under this Agreement. *In the event the Company deems it necessary to respond to, make an investigation of, or settle, defend, or compromise a claim, demand or suit, the Indemnitors acknowledge and agree that all loss, cost, and expense attendant to such response, investigation, settlement, defense, and compromise, whether incurred internally or otherwise, and whether or not IndemnItor has offered to defend Company, is included as an indemnified expense and shall be paid by Indemnitors to Company on demand*. . . .  (Emphasis added)

27.     Article 2 of the *Indemnity Agreement* further establishes that documentation

supporting any payments by SURETEC would be conclusive evidence of the INDEMNITORS'

outstanding liability and obligation to SURETEC:

> . . . *In the event of payments by the Company, a voucher, affidavit, bordereaux or other evidence of such payments are prima facie evidence of the amount paid, propriety thereof, and of the lndemnitors' liability*

CASE NO.: _____

*therefor to the Company*.  In the event that lndemnitors are covered by any insurance policy or policies for any matter or claim that may be brought against Company, or for which Company may have any exposure or liability, the coverage under such insurance policy or policies shall be primary. Indemnitors waive any and all claims of subrogation against Company. (Emphasis added)

28.     Pursuant to the terms of the *Indemnity Agreement*, the INDEMNITORS, jointly and

severally, agreed that SURETEC shall have the sole and absolute authority to resolve any claims

against the *Bonds*:

> The ***Company shall have the right to settle, compromise, prosecute, or defend any claim or action brought against the Company or any lndemnitor upon or relating to any bond*** or any affirmative claims by any Indemnitor against Company or a third party relating to any bonds or any interests granted herein. Company's decision with respect thereto shall be binding and conclusive upon the Indemnitors.  (Emphasis added)

29.     Pursuant to the terms of the *Indemnity Agreement*, the INDEMNITORS, jointly and

severally, agreed that SURETEC shall be entitled to be paid interest on all losses and expenses

incurred as a result of SURETEC having issued the *Bonds*:

> ***Indemnitors shall pay interest on, and interest shall accrue on, all unpaid indebtedness of lndemnitors to Company at an interest rate equal to the lesser of: (a) eighteen percent (18%) per annum or (b) the Highest Lawful Rate (as such term is defined below)***.  Interest on unpaid premiums shall not begin to accrue, however, until 45 days following the date of execution of a bond, or the renewal of a bond, by Company or its attorney-in-fact Notwithstanding any other provision herein, the aggregate interest rate charged under this Agreement, including all charges, fees, or other payments in connection herewith or therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate.  It is the intention of Company and indemnitors to conform strictly to any applicable usury laws. Accordingly, if Company contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be canceled automatically and, if previously paid, shall at Company's option be applied to the outstanding principal balance due hereunder or be refunded to indemnitors.  As used in this paragraph, the term "Highest Lawful Rate" means the maximum lawful interest rate, if any, that

-7-

CASE NO.: _____

at any time or from time to time may be contracted for, charged, or received under the laws applicable to Company which are presently in effect or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum non-usurious interest rate than applicable laws now allow.  (Emphasis added)

**E.      Demands, Continuing Obligations and Potential Liabilities**

30.      On January 5, 2012, SURETEC made demand upon the INDEMNITORS for indemnification under the *Indemnity Agreement*.  A true and correct copy of the January 5, 2012 e-mail is attached hereto as **Exhibit "D"**.

31.      On January 18, 2012, SURETEC issued a further demand upon the INDEMNITORS for indemnification under the *Indemnity Agreement*.  A true and correct copy of the January 18, 2012 letter is attached hereto as **Exhibit "E"**.

32.      The INDEMNITORS have failed and/or refused to fulfill their contractual and common-law indemnity obligations to SURETEC under the *Indemnity Agreement*.

33.      SURETEC has incurred substantial damages in investigating, addressing and resolving the various claims against the *Bonds*.  As of February 1, 2012, SURETEC has incurred and paid losses and expenses (including but not limited to expenses associated with experts, consultants and attorneys) in the amount of One Hundred One Thousand Four Hundred Twenty-One and 20/100 Dollars ($101,421.20).

34.      SURETEC continues to incur additional losses and/or expenses (including but not limited to expenses associated with its experts, consultants and attorneys) in connection with prosecution of the instant action.

35.      SURETEC has retained the services of the undersigned counsel to represent its interests in this matter, and is required to pay a reasonable fee for such services. Pursuant to the

CASE NO.: _____

terms of the *Indemnity Agreement*, the INDEMNITORS agreed to be liable for, and agreed that

SURETEC was entitled to recover from the INDEMNITORS, any and all attorneys' fees and costs

incurred in the prosecution of the instant action.

## COUNT I - BREACH OF CONTRACT - DAMAGES / DEMAND FOR INDEMNIFICATION

36.     SURETEC re-alleges and re-avers the allegations of paragraphs 1 through 35 hereof,

as if fully set forth herein.

37.     This is an action for damages seeking relief at law under the *Indemnity Agreement.*

38.     There exists a valid and fully enforceable contract between SURETEC and the

INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

39.     SURETEC has fully performed all of its obligations under the *Indemnity Agreement*.

40.     The INDEMNITORS have failed and/or refused to fully perform their obligations

under the *Indemnity Agreement*, including but not limited to their obligation to indemnify

SURETEC.

41.     As a proximate result of the INDEMNITORS' breach of their obligations under the

*Indemnity Agreement,* SURETEC has and will continue to incur substantial financial damages,

including but not limited to the expenditure of funds paid in investigating, addressing and resolving

the various claims against the *Bonds*, and the fees and costs incurred in the prosecution of the instant

action.

WHEREFORE, SURETEC respectfully requests that this Honorable Court enter a *Final*

*Judgment* in its favor and against the INDEMNITORS, awarding SURETEC its general, special and

consequential damages which have been and/or will be incurred as a result of the INDEMNITORS'

CASE NO.: _____

breach of the *Indemnity Agreement*, awarding SURETEC its interest, attorneys' fees and costs

incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and

awarding SURETEC such other and further relief as this Court deems necessary, just and proper.

## COUNT II - COMMON LAW INDEMNIFICATION

42.     SURETEC re-alleges and re-avers the allegations of paragraphs 1 through 35 hereof,

as if fully set forth herein.

43.     This is an action for damages seeking relief at common law and in equity.

44.     There exists a special relationship between SURETEC, as surety, and PBMC, as

principal, arising out of the parties' business dealings related to the projects and *Bonds*, such that it

is appropriate for common law indemnification to exist.

45.     SURETEC has fully and completely performed any and all obligations arising out of

the parties' business dealings related to the project and the *Bonds*, and is wholly without fault for any

losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

46.     As of February 1, 2012, SURETEC has incurred and paid losses and expenses

(including but not limited to expenses associated with experts, consultants and attorneys) in the

amount of One Hundred One Thousand Four Hundred Twenty-One and 20/100 Dollars

($101,421.20), and continues to incur loss adjustment expenses (including but not limited to

expenses associated with attorneys) in prosecution of the instant action, as a result of the special

relationship between SURETEC and PBMC.

47.     Any and all losses and expenses incurred to date as a result of the special relationship

between SURETEC and PBMC arise only out of the vicarious, constructive, derivative or technical

liability imposed upon SURETEC as a result of the fault and/or wrongdoing of PBMC.

CASE NO.: _____

48.     At common law, PBMC is responsible to SURETEC for any and all losses and expenses incurred or to be incurred.

WHEREFORE, SURETEC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against PBMG, awarding SURETEC its general, special and consequential damages which have been and/or will be incurred as a result of SURETEC's payment of losses and expenses for which PBMG should be liable under the legal theory of common law indemnity, awarding SURETEC its reasonable attorneys' fees and costs incurred in prosecution of the instant action, and awarding SURETEC such other and further relief as this Court deems necessary, just and proper.

### COUNT III – UNJUST ENRICHMENT

49.     SURETEC re-alleges and re-avers the allegations of paragraphs 1 through 35 hereof, as if fully set forth herein.

50.     This is an action for damages seeking relief at common law.

51.     SURETEC has conferred a benefit upon the INDEMNITORS by issuing the *Bonds* on behalf of PBMC and expending sums in connection with resolving the various claim against such *Bonds*.

52.     The INDEMNITORS voluntarily accepted, and continue to accept and retain the benefits conferred upon them by SURETEC.

53.     The circumstances are such that it would be inequitable for the INDEMNITORS to retain the benefit conferred upon them by SURETEC without reimbursing SURETEC for the value thereof.

CASE NO.: _____

WHEREFORE, SURETEC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, awarding SURETEC its general, special and consequential damages which have been and/or will be incurred as a result of the unjust enrichment of the INDEMNITORS, awarding SURETEC its attorneys' fees and costs incurred in prosecution of the instant action, and awarding SURETEC such other and further relief as this Court deems necessary, just and proper.

DATED this 9th day of February, 2012.

**ETCHEVERRY HARRISON LLP**
Attorneys for SURETEC
150 South Pine Island Road, Suite 105
Fort Lauderdale, Florida 33324
Telephone:     (954) 370-1681
Facsimile:     (954) 370-1682


By: _____/s/Jeffrey S. Geller_____
        Edward Etcheverry, Fla. Bar No.: 856517
        Jeffrey S. Geller, Fla. Bar No.: 63721


L:\A - CLIENTS\259 - SureTec Insurance Company\-1001 Palm Beach Marine Construction, Inc\Pleadings - INDEMNITY\Complaint (federal).wpd